COMMONWEALTH vs. ANGELO B. ALVAREZ.

Bristol. May 6, 1992. - July 24, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*"School Zone" Statute. Controlled Substances. Due Process of Law*, Elements of criminal offense. *Intent. Statute*, Construction. *Practice, Criminal*, Duplicative punishment, Sentence, Instructions to jury. *Constitutional Law*, Sentence, Double jeopardy, Judicial review, Cruel and unusual punishment. *Evidence*, Consciousness of guilt.

General Laws c. 94C, § 32J, establishing a mandatory minimum term of imprisonment of not less than two years for any person who violates G. L. c. 94C, §§ 32-32F, or § 32I, while within 1,000 feet of a public or private elementary, vocational or secondary school, and providing that lack of knowledge of school boundaries is not a defense in such a case, does not violate a defendant's due process rights, as protected by articles 1, 10, and 12 of the Massachusetts Declaration of Rights, by removing a requirement of guilty knowledge as to one element of the offense, namely the boundaries of the protected school zone. [228-230]

On appeal from convictions under G. L. c. 94C, § 32A, for possession of cocaine with intent to distribute, and G. L. c. 94C, § 32J, for violating § 32A while within 1,000 feet of a school, where the Legislature had made clear that two consecutive sentences must be imposed in these circumstances by expressly providing that the sentence imposed for the violation of § 32J must begin after the sentence imposed for the predicate crime has expired, this court rejected defendant's arguments that the so-called "same evidence" rule of *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871), should be applied to his benefit notwithstanding the Legislature's definitive expression of intent, and that a prohibition against multiple punishments precluding the punishment prescribed by § 32J is implicit in articles 1, 10, and 12 of the Massachusetts Declaration of Rights. [230-233]

General Laws c. 94C, § 32J, establishing a mandatory minimum term of imprisonment for any person who violates G. L. c. 94C, §§ 32-32F, or § 32I, while within 1,000 feet of a school, and providing that lack of knowledge of school boundaries is not a defense in such a case did not, by holding a defendant charged under § 32J strictly liable as to the location of the protected school zone, and by requiring after conviction a consecutive mandatory minimum sentence, violate the prohibition in

art. 26 of the Massachusetts Declaration of Rights against cruel or un-
usual punishment. [233-236]
In the circumstances, a criminal defendant failed to demonstrate that the
consciousness of guilt instructions given to the jury at his trial created a
substantial risk of a miscarriage of justice. [237]


INDICTMENTS found and returned in the Superior Court
Department on September 13, 1989.

The cases were tried before *Gerald F. O'Neill, Jr.*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Benjamin H. Keehn*, Committee for Public Counsel Ser-
vices, for the defendant.

*Cynthia A. Vincent*, Assistant District Attorney, for the
Commonwealth.

*Scott Harshbarger*, Attorney General, *Pamela L. Hunt, R.
Michael Cassidy & Paula J. DeGiacomo*, Assistant Attor-
neys General, for the Attorney General, amicus curiae, sub-
mitted a brief.

GREANEY, J. In this case, we consider challenges to the va-
lidity of G. L. c. 94C, § 32J, as inserted by St. 1989, c. 227,
§ 2, set forth below.[1] This statute, commonly known as the
"school zone" statute, establishes a mandatory minimum

---

[1] 'Any person who violates the provisions of section thirty-two, thirty-
two A, thirty-two B, thirty-two C, thirty-two D, thirty-two E, thirty-
two F or thirty-two I while in or on, or within one thousand feet of
the real property comprising a public or private elementary, voca-
tional, or secondary school whether or not in session shall be pun-
ished by a term of imprisonment in the state prison for not less than
two and one-half nor more than fifteen years or by imprisonment in
a jail or house of correction for not less than two nor more than two
and one-half years. No sentence imposed under the provisions of this
section shall be for less than a mandatory minimum term of impris-
onment of not less than two years. A fine of not less than one thou-
sand nor more than ten thousand dollars may be imposed but not in
lieu of the mandatory minimum term of imprisonment as established
herein. In accordance with the provisions of section eight A of chap-
ter two hundred and seventy-nine such sentence shall begin from
and after the expiration of the sentence for violation of section

term of imprisonment of not less than two years for any person who violates G. L. c. 94C, §§ 32-32F, or § 32I, while within 1,000 feet of a public or private elementary, vocational or secondary school. The statute also provides that lack of knowledge of school boundaries is not a defense in such a case and that the two-year mandatory minimum sentence be served from and after any sentence imposed for the violation of G. L. c. 94C, §§ 32-32F, or § 32I.

At trial, the jury could have found the following facts. Police officers from the city of New Bedford, believing that cocaine was being distributed from a first floor apartment at 305 South Second Street, obtained a warrant to search the apartment. The officers executed the warrant (which did not require them to knock and announce themselves prior to entry) on the evening of August 24, 1989. At approximately 8:30 that evening, an undercover officer approached the rear door of the apartment. He observed a man at the doorway, who knocked on the door and asked for "a half." The man slid money under the door, received a small bag containing a white substance, then departed. The undercover officer knocked on the door, and a person inside asked him what he wanted. He also requested "a half," which he testified was a quantity of cocaine with a street value of approximately $40. He slid $40 under the door and shortly afterward received a small bag of cocaine later determined to weigh .73 gram. He left the building and informed his colleagues that he had made the purchase. Shortly afterward, teams of officers broke down the front and the rear doors of the apartment with battering rams. The doors had been barricaded with two-by-four pieces of wood supported by metal brackets attached to the door frame. As the officers entered the rear door of the apartment, they saw four men running into a bedroom and followed them. Three of the men, including the

thirty-two, thirty-two A, thirty-two B, thirty-two C, thirty-two D, thirty-two E, thirty-two F or thirty-two I.

"Lack of knowledge of school boundaries shall not be a defense to any person who violates the provisions of this section."

defendant, resisted the police officers in the bedroom door-
way, while the fourth man went into a bathroom that was
located inside the bedroom. He was carrying a plastic sand-
wich bag which held several smaller bags containing white
powder. Before the officers could reach him, he flushed the
sandwich bag down the toilet. The police searched the apart-
ment and seized .55 gram of cocaine, drug paraphernalia and
a small amount of cash, including the $40 that had been
used for the purchase by the undercover officer. The defend-
ant, along with four other men inside the apartment, was
arrested.

The Commonwealth alleged that the apartment was set up
for selling cocaine and that the defendant was involved in the
business. The defendant was charged with the possession of
cocaine with intent to distribute in violation of G. L. c. 94C,
§ 32A, and with violation of G. L. c. 94C, § 32J, the school
zone statute. The parties stipulated that the apartment where
the drugs were seized is within 1,000 feet of a public school.
A judge of the Superior Court denied the defendant's pre-
trial motion to dismiss the § 32J charge. That motion was
presented on the ground that the "lack of knowledge of
school boundaries" provision in § 32J deprived the defendant
of his Federal and State constitutional rights of due process
by removing guilty knowledge as an element of the offense.
A jury found the defendant guilty on both charges. The de-
fendant then moved to dismiss his conviction under § 32A for
possession of cocaine with intent to distribute on the ground
that crime constituted a lesser included offense of the § 32J
charge. That motion was denied, and the defendant was sen-
tenced to a term of ninety days in a house of correction on
the § 32A conviction, and a two-year consecutive term on the
§ 32J conviction. The defendant appealed, and we allowed
the defendant's application for direct appellate review. We
affirm the convictions.[2]

---

[2]We acknowledge the brief amicus curiae filed by the Attorney General
in support of the Commonwealth's position in the case.

On appeal, the defendant argues that G. L. c. 94C, § 32J, violates State constitutional due process provisions,[3] and that the imposition of a mandatory minimum sentence thereunder violates common law prohibitions against double jeopardy and his State constitutional right to be protected against cruel or unusual punishment. He also claims error in the instruction given by the trial judge. on consciousness of guilt.

1. We reject the defendant's argument that § 32J violates his due process rights as protected by articles 1, 10, and 12 of the Declaration of Rights because it removes guilty knowledge as to one element of the offense, namely the school boundaries element.[4] The defendant is not helped by his reference to decisions where this court, or the Appeals Court, has imposed a mens rea requirement for criminal statutes imposing serious penalties for the defendant's commission of an unlawful act alone. See, e.g., *Commonwealth* v. *Crosscup*, 369 Mass. 228, 234-235 & n.5 (1975); *Commonwealth* v. *Jackson*, 369 Mass. 904, 916 (1976); *Commonwealth* v. *Buckley*, 354 Mass. 508, 511-512 (1968); *Commonwealth* v. *Dellamano*, 17 Mass. App. Ct. 156, 157 (1983), *S.C.*, 393

---

[3]The defendant has abandoned his contention that § 32J violates Federal due process protections because Federal cases which have construed the Federal school zone statute, 21 U.S.C. § 860 (1982), have concluded that statute does not impinge upon due process rights protected under the Fourteenth Amendment to the United States Constitution. See *United States* v. *Haynes*, 881 F.2d 586 (8th Cir. 1989); *United States* v. *Holland*, 810 F.2d 1215 (D.C. Cir.), cert. denied, 481 U.S. 1057 (1987); *United States* v. *Ofarril*, 779 F.2d 791 (2d Cir. 1985), cert. denied, 475 U.S. 1029 (1986); *United States* v. *Falu*, 776 F.2d 46 (2d Cir. 1985). These decisions have concluded that the Federal statute is a strict liability statute even in the absence of any express language like the "lack of knowledge" language in § 32J.

[4]In his pretrial motion to dismiss the indictments for the alleged violation of due process, the defendant asserted that the school zone statute violated only art. 12; no mention was made of articles 1 and 10. The defendant makes no particularly distinct argument under any of these constitutional provisions beyond urging that his due process rights have been violated. Articles 1, 10 and 12 have always been considered as embodying due process protections at least parallel to those granted by the Fourteenth Amendment. See *Commonwealth* v. *Jackson*, 369 Mass. 904, 916 (1976). We see no reason to fault the defendant's argument in this case for his failure to expressly mention articles 1 and 10 in his motion to dismiss.

Mass. 132 (1984); *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. 358, 363-364 (1982). In these cases, the criminal statutes at issue were silent as to whether mens rea was required for a conviction, and the appellate courts construed the statutes to require mens rea in order to avoid possible due process doubts. In so doing, however, the courts acknowledged that clear legislative language indicating that mens rea was not required for conviction could produce a different result. See *Commonwealth* v. *Buckley, supra* at 511-512.

The Legislature has provided such clear direction in § 32J by specifically stating that lack of knowledge of school boundaries is not to be considered an issue in any prosecution under the statute. The Legislature may permissibly do this. That body has "broad power to define and limit the mens rea element of criminal offenses," *Commonwealth* v. *Tart*, 408 Mass. 249, 264 (1990), quoting *Simon* v. *Solomon*, 385 Mass. 91, 103 (1982), and, consistent with that authority, may "create strict criminal liabilities by defining criminal offenses without any element of scienter." *Commonwealth* v. *Miller*, 385 Mass. 521, 524 (1982), quoting *Smith* v. *California*, 361 U.S. 147, 150 (1959). Even in the absence of specific language such as the language that appears in § 32J, we have construed criminal statutes which authorize the imposition of serious sentences to permit conviction without proof of mens rea, acknowledging that "[s]trict criminal liability is not necessarily a denial of due process of law." *Commonwealth* v. *Miller, supra* (statutory rape does not admit of a mistake of fact defense). See also *Commonwealth* v. *Knap*, 412 Mass. 712, 715 (1992); *Commonwealth* v. *Dunne*, 394 Mass. 10, 18-19 (1985); *Commonwealth* v. *Baker*, 17 Mass. App. Ct. 40, 42 (1983); *Nelson* v. *Moriarty*, 484 F.2d 1034 (1st Cir. 1973).

It is also of significance that § 32J is not totally void of any mens rea requirement. Before a conviction can be obtained thereunder the Commonwealth must prove the defendant guilty of a predicate drug-dealing offense requiring mens rea — in this case the possession of cocaine with intent to distribute. Section § 32J thus imposes liability only on

someone who knows he is dealing in drugs and requires the dealer to proceed at his peril with respect to the proximity of a school. In this last feature § 32J resembles other criminal statutes which punish an underlying violation committed with mens rea and consider the offense aggravated by a fact of which the defendant may not have express knowledge. See G. L. c. 269, § 12E (1990 ed.) (discharge of a firearm within 500 feet of a dwelling; no requirement of knowledge of the distance); G. L. c. 94C, § 32E (1990 ed.) (increasing mandatory minimum terms based on the weight of controlled substances with no requirement that the defendant have knowledge of the weight of the substance or that it exceeded any specified limit). We conclude that § 32J does not violate State constitutional rights of due process.[5]

2. The defendant next argues that the imposition of multiple punishments in this case violates his right not to be punished twice for the same offense. He bases his argument on the "same evidence" rule which states that "where convictions are returned under two statutes, unless 'each statute requires proof of an additional fact which the other does not,'

---

[5]School zone statutes like § 32J are not new and have been upheld by numerous courts against a variety of challenges that their lack of a scienter element creates a defect in the statute. See *United States* v. *Ofarril*, 779 F.2d 791 (2d Cir. 1985), cert. denied, 475 U.S. 1029 (1986) (to construe the Federal school zone statute as requiring a scienter element would distort the statutory language and frustrate Congress' unambiguous intent to penalize the distribution of narcotics within 1,000 feet of a school). Similar Federal decisions are cited in note 3, *supra.* See also *State* v. *Burch*, 545 So. 2d 279, 281 (Fla. App. 1989) (no knowledge of location within school zone required); *State* v. *Willford*, 571 N.E.2d 310, 311 (Ind. 1991) (same); *State* v. *Brown*, 227 N.J. Super. 429, 435-436 (1988) (Legislature could properly eliminate mens rea from school zone statute to shield school children from the violent and dangerous narcotic criminal milieu); *State* v. *Moore*, 782 P.2d 497, 504-505 (Utah 1989) (aggravating element of proximity to school does not violate due process).

There may be extraordinary circumstances shown in some cases which would make it unfair to find guilt under § 32J. See, e.g., *United States* v. *Coates*, 739 F. Supp. 146, 152-153 (S.D.N.Y. 1990) (dismissing school zone indictment where defendant was alleged to be in possession of drugs on an underground train near a school; "[t]o posit liability . . . in these fortuitous circumstances is simple overreaching").

consecutive sentences may not be imposed." *Commonwealth v. Wilson*, 381 Mass. 90, 124 (1980), quoting *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871). The defendant believes that this rule expresses a right that is at least implicit in articles 1, 10 and 12 of the Declaration of Rights. Since the crimes of which the defendant stands convicted meet the "same evidence" test, the defendant maintains that a consecutive sentence for the § 32J conviction cannot be imposed on him.

The "same evidence" rule, first expressed in the *Morey* case, is a rule of Massachusetts common law, and "[o]ur determinations [applying it] have not been based on the double jeopardy clause of the Fifth Amendment to the Constitution of the United States (applicable to the States through the Fourteenth Amendment) or on whatever comparable principle may be found in the Constitution of the Commonwealth (there being no explicit double jeopardy clause)."[6] *Shabazz v. Commonwealth*, 387 Mass. 291, 294 (1982). Under our common law rule, the fact that the crime described in § 32A is a lesser included offense of the crime described in § 32J does not automatically make unlawful the imposition of separate consecutive sentences on a defendant who is convicted of both crimes. As has already been noted, because the Legislature has broad power to define crimes, and to create punishments for them, it may permissibly impose consecutive punishments. See *Missouri v. Hunter*, 459 U.S. 359, 368 (1983) ("[s]imply because two criminal statutes may be construed to proscribe the same conduct . . . does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes"); *Jones v. Thomas*, 491 U.S. 376, 381 (1989) ("[R]espondent's conviction of both felony murder and [the underlying felony of] attempted robbery gave rise to a double jeopardy claim only because the [State] Legislature did not in-

---

[6]The United States Supreme Court has applied the *Morey* test in construing the double jeopardy clause of the Fifth Amendment. *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

tend to allow conviction and punishment for *both* felony murder and the underlying felony" [emphasis in original]); *Commonwealth* v. *Crocker*, 384 Mass. 353, 359-360 (1981) ("Whether characterized as a constitutional requirement under the double jeopardy clause of the Fifth Amendment . . . or as a common law rule, . . . 'where two statutory provisions proscribe the "same offense" [as defined by *Morey* and *Blockburger* (see note 6, *supra*)] they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent,'" quoting *Whalen* v. *United States*, 445 U.S. 684, 692 [1980]).

The "same evidence" rule is a principle of statutory construction designed to aid in the judicial interpretation of criminal statutes where the Legislature has not expressed an intent as to consecutive punishments. See *Commonwealth* v. *Crocker, supra* at 360 ("[T]he prohibition against duplicitous convictions limits not the legislative power to declare substantive criminal law but rather the judicial interpretation of that law"). Where the Legislature has specifically authorized cumulative punishment under two statutes, even if the two statutes proscribe the same conduct under the *Morey* test, a court's job of statutory construction is terminated, and the intent of the Legislature is to be enforced. See *Shabazz* v. *Commonwealth, supra* at 294; *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 272, cert. denied, 459 U.S. 864 (1982); *Crocker* v. *Commonwealth, supra* at 360.

The Legislature has made it clear that two consecutive sentences must be imposed by expressly providing that the sentence imposed on the violation of § 32J must begin after the sentence imposed on the violation of the predicate crime has expired. Although the point might have been stated in other language, the Legislature's intent is not ambiguous or obscure. We reject the defendant's arguments that the *Morey* test should be applied to his benefit notwithstanding the Legislature's definitive expression of intent. We also reject the defendant's arguments that we should find implicit in articles 1, 10, and 12 of the Declaration of Rights a prohibi-

tion against multiple punishments that strikes down the punishment explicitly called for by § 32J.

3. The defendant also argues that § 32J, by holding him strictly liable on the school zone element, and then requiring after conviction a consecutive mandatory minimum sentence, violates the prohibition in art. 26 of the Declaration of Rights against cruel or unusual punishment. This issue was not raised below, but we choose to consider it because it involves a fundamental right, has been fully briefed, and is certain to be raised in other cases. See *Commonwealth* v. *Colon-Cruz*, 393 Mass. 150, 154-157 (1984); *Commonwealth* v. *Davis*, 410 Mass. 680, 684 (1991). We reject the argument.

We note again that the Legislature has considerable latitude to determine what conduct should be regarded as criminal and to prescribe penalties to vindicate the legitimate interests of society. *Commonwealth* v. *Morrow*, 363 Mass. 601, 610-611 (1973). *McDonald* v. *Commonwealth*, 173 Mass. 322, 328 (1899). "The function of the legislature is primary, its exercises fortified by presumptions of right and legality, and is not to be interfered with lightly, nor by any judicial conception of their wisdom or propriety." *Weems* v. *United States*, 217 U.S. 349, 379 (1910). It is thus with restraint that we exercise our power of review to determine whether the punishment before us exceeds the constitutional limitations imposed by art. 26.

This court has recognized that "it is possible that imprisonment in the state prison for a long term of years might be so disproportionate to the offense as to constitute a cruel or unusual punishment." *McDonald* v. *Commonwealth*, *supra* at 328. Although punishment may be cruel and unusual not only in manner but also in length, "a heavy burden is on the sentenced defendant to establish that the punishment is disproportionate to the offense for which he was convicted." *Commonwealth* v. *O'Neal*, 369 Mass. 242, 248 (1975) (Tauro, C.J., concurring). It must be so disproportionate to the crime that it "shocks the conscience and offends fundamental notions of human dignity." *In re Lynch*, 8 Cal. 3d 410, 424 (1972). In deciding whether the punishment called

for by § 32J violates this standard, we examine three objective considerations: (1) the nature of the offender and offense in light of the degree of harm to society; (2) sentencing provisions in other jurisdictions for similar offenses; and (3) sentences for more severe offenses within the Commonwealth. *Commonwealth* v. *Therriault*, 401 Mass. 237, 240 (1987). *Cepulonis* v. *Commonwealth*, 384 Mass. 495, 497 (1981), appeal dismissed, 455 U.S. 931 (1982).

As to the first consideration, the Legislature could rationally conclude that the danger to the public, particularly young children and adolescents, posed by the intent to distribute or the distribution of dangerous drugs near a school is grave enough to require severe punishment. It is well recognized that traffic in narcotics creates serious social concerns and is at the root of other crimes. Drugs are especially destructive of children and young people, tending to trap them at an early age in a life of antisocial behavior, poverty, despair and crime. The enhanced penalty in § 32J serves as a deterrent to those who distribute or traffic in drugs.

Further, the penalty called for by § 32J does not punish a status offense or a fortuitous event, because the sanction of the statute is imposed only on those who are found guilty of a predicate offense which requires an intent to distribute or distribution of drugs. Compare *Robinson* v. *California*, 370 U.S. 660 (1962) (imprisonment for status of being a drug addict violates the Eighth Amendment's ban on cruel and unusual punishment). Also, on the point of proportionality, a sentencing judge retains discretion with respect to any intent to distribute offense which forms the predicate for a § 32J conviction (viz., the crimes stated in G. L. c. 94C, § 32, and §§ 32A through F) to fashion a fair sentence. These offenses do not carry mandatory minimum requirements. Thus, a sentencing judge who concludes that the "from and after" penalty provisions of § 32J are disproportionate to the offense before him may mitigate the impact of § 32J by sentencing the defendant to a lesser sentence or probation on the underlying offense. (Note, in this case, the defendant's sentence on

his conviction under G. L. c. 94C, 32A, to a term of ninety days.)[7]

Turning to the second consideration of the analysis, the two-year mandatory enhancement for a school zone offense is not excessive when compared to punishments regularly imposed for other narcotics offenses in the Commonwealth, some of which may be considered extreme in particular circumstances. See, e.g., G. L. c. 94C, § 32E (b) (4) (fifteen-year minimum mandatory sentence for trafficking over 200 grams of cocaine); G. L. c. 94C, § 32A (d) (five-year minimum mandatory sentence for distribution of cocaine following previous drug conviction). Although one could disagree with the ultimate wisdom of a legislative decision which in some cases places a mandatory minimum sentence upon another mandatory minimum sentence, it cannot reasonably be said that the net result in terms of total years of incarceration is constitutionally disproportionate to sentences regularly imposed for more severe offenses in the Commonwealth. See, e.g., *Cepulonis* v. *Commonwealth, supra* at 499 (upholding forty to fifty year sentence for possession of machine gun).

With respect to the third consideration, the sentencing scheme of G. L. c. 94C, § 32J, is proportionate to punishments imposed in other jurisdictions for a similar offense. The Federal school zone act provides for up to twice the penalty imposed for the underlying drug offense. 21 U.S.C. § 860 (1992) (possible forty year sentence). At least twenty-three States and territories have also enacted criminal statutes which penalize in various ways the sale or distribution of

---

[7]With regard to the triggering offenses under G. L. c. 94C, § 32J, which themselves carry minimum mandatory penalties (trafficking, distribution to minors, and second and subsequent distribution), it can be argued with force that these constitute the most dangerous narcotics offenses which the Legislature has the greatest interest in punishing and deterring. The Legislature would be acting within its constitutional authority by simply increasing the mandatory penalties for these offenses by two years. See *Opinion of the Justices*, 378 Mass. 822, 831 (1979). As matter of logic, it follows that the Legislature permissibly can punish the commission of these offenses within a school zone with a mandatory minimum two-year sentence.

controlled substances on or near school grounds.[8] Many of these jurisdictions provide enhanced penalties for school zone drug offenses, either through multipliers patterned after the Federal statute or through required "from and after" sentences like the penalties imposed in Massachusetts.[9]

[8]Ala. Code § 13A-12-250 (1991 Supp.); Colo. Rev. Stat. § 18-18-105(3.5)(a) (1991 Supp.); Conn. Gen Stat. § 21a-278a (b) (1991); Del. Code Ann. tit. 16, § 4767 (1990 Supp.); Fla. Stat. § 893.13(1)(e)(1) (1991); Ga. Code Ann. § 16-13-32.4 (Michie 1991 Supp.); Haw. Rev. Stat. § 712-1249.6 (1991 Supp.); Ill. Rev. Stat. ch. 56½, par. 1407 (1991); Ind. Code Ann. § 35-48-4-10 (Burns 1992 Supp.); Iowa Code Ann. § 204.401A (West 1991 Supp.); La. Rev. Stat. Ann. § 40:981.1 (West. 1992 Supp.); Mich. Comp. Laws Ann. § 333.7410 (West 1992 Supp.); Minn. Stat. § 152.023 (1990); Miss. Code Ann. § 41-29-142 (1991 Supp.); N.J. Stat. Ann. § 2C:35-7 (West 1991 Supp.); N.D. Cent. Code § 19-03.01-23.1 (Michie 1991); Okla. Stat. tit. 63, § 2-418 (1991); P.R. Laws . Ann. tit. 24, § 2411a (1989); R.I. Gen. Laws § 21-28-4.07.1 (Michie 1989); S.C. Code § 44-53-445 (Law. Coop. 1991 Supp.); Va. Code Ann. § 18.2-255.2 (Michie 1991 Supp.); V.I. Code Ann. tit. 19, § 604 (5)(A)(a) (1991 Supp.); Wyo. Stat. § 35-7-1036 (1991).

[9]Ala. Code § 13A-12-250 (1991 Supp.) (additional five years added on to drug distribution sentence with no parole eligibility); Colo. Rev. Stat. § 18-18-105 (3.5)(a) (1991 Supp.) (five-year minimum sentence for conviction); Conn. Gen. Stat. § 21a-278a (b) (1991) (three-year consecutive sentence for school zone violation; no suspension); Fla. Stat. § 893.13(1)(e)(1) (1991) (three-year mandatory sentence, no parole, for school zone drug offense); Ga. Code Ann. § 16-13-32.4 (Michie 1991 Supp.) (sentence of up to twenty years, "shall not merge" with sentence imposed on underlying offense); La. Rev. Stat. Ann. § 40:981.1 (West 1992 Supp.) (sale to student may result in up to twice the punishment otherwise authorized by statute); Mich. Comp. Laws. Ann. § 333.7410 (West 1992 Supp.) (two-year minimum mandatory sentence for distribution within 500 feet of school zone); Miss. Code Ann. § 41-29-142 (1991 Supp.) (court had discretion to impose up to twice the otherwise authorized penalty for distribution within 1,500 feet of school zone); N.J. Stat. Ann. § 2C:35-7 (West 1991 Supp.) (from and after sentence of one-third to one-half of underlying offense or three years whichever greater); P.R. Laws Ann. tit. 24, § 2411a (1989) (twice otherwise authorized penalties for underlying offenses) R.I. Gen. Laws § 21-28-4.07.1 (Michie 1989) (up to twice otherwise authorized penalty for underlying offense); S.C. Code Ann. § 44-53-445 (Law. Coop. 1991 Supp.) (if offense involves distribution of crack cocaine, mandatory ten-year imprisonment and ten thousand dollar fine); Va. Code Ann. § 18.2-255.2(B) (Michie 1991 Supp.) (school zone drug violation is separate felony; minimum mandatory one-year imprisonment, maximum five years); Wyo. Stat. § 35-7-1036 (1991) (up to twice otherwise authorized penalties).

4. The defendant's last argument concerns the judge's instruction on consciousness of guilt. It is conceded that the instruction that was given satisfied the requirements of *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982). No request was made for the supplemental instruction discussed in *Toney*, *supra* at 585 n.6. No objection was made by the defendant's trial counsel to the instruction given. It was adequately brought to the jury's attention that the defendant's conduct when the police arrived may have had an innocent basis, and that he maintained that he was only present in the apartment without any knowledge of, or intent to distribute, drugs. As the defendant's counsel put it in closing argument: "this [is] a case of [the defendant] being in the wrong place at the wrong time." In the circumstances, the defendant has not demonstrated that the consciousness of guilt instruction created a substantial risk of a miscarriage of justice.

*Judgments affirmed.*