Garsh, E. Susan, J.
A grand jury returned two indictments against defendant David Einis (“Einis”) alleging criminal violations of G.L.c. Ill, §142A. The indictments allege that the defendant violated regulations promulgated, pursuant to §142A, by the Massachusetts Department of Environmental Protection (“DEP”) (1) by failing to ensure compliance with procedures to prevent the release of visible or particulate asbestos emissions into the air in violation of 310 Code Mass. Regs. §7.15(l)(c), and (2) by failing to provide the DEP with written notice of the “demolition/renovation operation involving asbestos-containing material.” Both indictments are predicated upon the defendant’s status as the “owner/operator” of a demolition/renovation operation. The matter is before the court on Einis’s motion to dismiss the indictments pursuant to Mass.R.Crim.P. 13. For the reasons discussed below, Einis’s motion to dismiss is DENIED.
*501 DISCUSSION
Einis argues that the indictments against him should be dismissed because the indictments and Bill of Particulars, read together, improperly set out a strict liability offense that purports to make the defendant criminally liable without any allegation of criminal intent. He contends that the severity of the criminal penalties provided for by §142A, namely a fine of up to twenty-five thousand dollars and/or imprisonment for up to one year, mandates that the regulations be construed to require guilty knowledge or intent to commit a crime. More specifically, he argues that the Commonwealth needs to prove that the defendant had knowledge of the facts giving rise to the alleged criminality.
Without doubt, the Legislature intended the current version of §142A to be a strict liability offense. Initially, that statute provided for small fines when a person, “after due notice, continues to violate” the DEP’s rules and regulations.[1] The language requiring “due notice” before a punishable violation occurred was removed when the statute was amended in 1995.
The Legislature has the authority to create strict liability public welfare offenses that “make criminal an act or omission even where the person responsible has no blameworthy condition of the mind.” Commonwealth v. Tart 408 Mass. 249, 264 (1990) (internal citations omitted). The penalties provided by §142A, while not inconsequential, are not so severe that due process would preclude application of strict liability principles. Cf. Commonwealth v. Alvarez, 413 Mass. 224, 229-30 (1992) (upholding two-year minimum mandatory sentence for school zone violation): Commonwealth v. Jackson, 369 Mass. 904, 917 (1976) (upholding mandatory one-year sentence for failure to obtain a firearm license despite “absence of knowledge as to the existence of a license”).[2] Contrast Commonwealth v. Buckley, 354 Mass. 508, 511 (1968) (characterizing five-year prison sentence as a “severe penalty”). A conviction for a violation of §142A only constitutes a misdemeanor. Unlike conviction of a felony offense, conviction of a misdemeanor would not do “grave damage to an offender’s reputation.” Tart, 408 Mass. at 264-65.
“(P)ublic welfare offenses” are generally found in situations where the accused, even though he does not intend the violation “usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities.” Morissette v. United States, 342 U.S. 246, 256 (1952) (holding federal statute that punished as a felony the stealing of government property — a common-law larceny-type offense for which scienter traditionally was required — not to be public welfare strict liability offense). Consistent with the policy behind public welfare offenses, the regulations at issue impose a duty on individuals who are in a position to prevent harm to the public. Just as the Court concluded in Jackson, 369 Mass. at 917, that the Legislature could criminalize possession of a firearm without a license without requiring knowledge as to the existence of a license, reasoning that a person in possession of a firearm would hardly be surprised to learn that possession required a license, so too an owner of property would hardly be surprised to learn that environmental obligations have been imposed on owners when undertaking certain types of construction activities. The theory is that where a danger is posed to the health and safety of the general public, that danger justifies placing the burden on the individual to ascertain whether his conduct is encompassed by the statutory prohibition. Commonwealth v. Kraatz, 2 Mass.App.Ct. 196, 198 n.1 (1974) (noting that the Massachusetts Legislature has pioneered in the creation of strict liability offenses designed to safeguard the public welfare). This principle is applicable even though it may pose practical difficulties upon property owners such as Einis. As the Appeals Court has stated:
We ... understand the practical difficulty an [owner of property] may have in finding the way to and through the statutes of Massachusetts. A set of the General Laws is not standard equipment on the backbar of the average [property owner]. That difficulty, however, is not peculiar to the statutory scheme in question but pertains to the whole vast underbrush of statutes and regulations which govern the lives of the inhabitants of the Commonwealth or the country, whether the subject is conditions of employment, health, the manufacture and distribution of food, the sale of securities, the lending of money, the sale of alcoholic beverages, waste disposal, or something else. When statutes impose punishment out of considerations of public policy, lack of knowledge of the law or of the fact that the law has been violated does not exonerate the person who may have unwittingly violated the statute.
Commonwealth v. Belanger, 30 Mass.App.Ct. 31, 33 (1991).
After considering all the factors that bear on whether a criminal law may properly be characterized as a strict liability statute, this court concludes that a violation of Section 142A, and the regulations promulgated thereunder, constitutes a violation of a public welfare offense. Accordingly; the defendant is not entitled to dismissal of the indictments on the basis that the indictments and the Bill of Particulars do not identify a criminal act for which the defendant can be found guilty of a crime.
Einis also argues that the regulations promulgated at §7.15 are unconstitutionally vague because the term “owner/operator” is ambiguous as to who may be liable for violation of the regulations, and this ambiguity may lead to arbitrary enforcement.[3] Einis contends that the undefined “slash mark” in the term *502 “owner/operator” makes it unclear whether the DEP intended the owner, the operator, or both, to be liable for violation of the regulations.
Insofar as Einis is making a facial vagueness challenge, it fails. Courts do not entertain a facial vagueness challenge unless the statute in question implicates First Amendment protections. See Commonwealth v. Hendricks, 452 Mass. 97, 98 n.1 (2008). Einis, for good reason, does not allege that §7.15 threatens interests protected by the First Amendment to the United States Constitution.
As applied to Einis, the regulations at §7.15 are not unconstitutionally vague. The regulations explicitly define the term “owner/operator” as “any person, any department or instrumentality of the federal government, or any public or private group which: a) has legal title, alone or with others, of a facility, b) has the care, charge, or control of a facility, or c) has control of a demolition/renovation operation, including but not limited to contractors and subcontractors.” 310 Code Mass. Regs. §7.00. A statute or regulation must provide “a reasonable opportunity for a person of ordinary intelligence” to know what type of conduct is prohibited. Hendricks, 452 Mass. at 102. The definition of “owner/operator” makes clear that the owner of property where a project involving asbestos-containing material is taking place must follow the regulations outlined at §7.15(1)(b) & (c). The undefined “slash mark” does not render the term “owner/operator” unconstitutionally vague. A “slash,” also called a virgule, commonly means “and/or” and does not mandate a choice between two things. See Webster’s II New College Dictionary 1234 (2001) (defining virgule as “[a] diagonal mark (/) used esp. to separate alternatives, as in and/or . . .”). A person of ordinary intelligence would know that the regulations in question applied to a person such as Einis, the owner of property where a project involving asbestos-containing material was taking place. Cf. United States v. Geppert Bros., Inc., 638 F.Sup. 996, 999-1000 (E.D.Pa. 1986) (rejecting argument that defendant cannot be liable as the “owner or operator of a demolition operation” where it contracted with another to do the demolition work, holding that analogous federal regulations define the term “owner or operator” broadly to include both the owner of the property being demolished and the operator of the demolition project). The guidelines also provide sufficiently clear guidance to law enforcement officials and triers of fact. The regulations are not unconstitutionally vague as applied to the defendant.
ORDER
For the foregoing reasons, its is ORDERED that the defendant’s motion to dismiss be and hereby is DENIED.

 “Any municipality, corporation or person, whichafterdue notice, continues to violate any such rule or regulation shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than ten nor more than fifty dollars for the first offence, and not less than twenty nor more than one hundred dollars for every succeeding offence.” St. 1954, c. 672, §3 (emphasis added).

 In Jackson, the Court did constme the statute, in order to avoid possible constitutional doubts, as requiring as a necessary element of the offense proof that the accused knew that he possessed a firearm. 369 Mass. at 916. The defendant does not argue that the statute at issue would allow him to be prosecuted even if he did not know that he owned property.

 At the hearing, Einis additionally raised the possibility that the statute might be unconstitutional because the Commonwealth has discretion to enforce the law either by criminal prosecution or by seeking civil penalties. No authority was cited in support of that proposition. The court gave the defendant until December 4, 2012 to file a supplemental memorandum if he wished the court to consider this issue. Because no supplemental memorandum was filed, this argument is not addressed by the court.